1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (at@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, CA 90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  GREGORY E. KELLER (To be Admitted *Pro Hac Vice*)
   (gkeller@chitwoodlaw.com)
8  DARREN T. KAPLAN (To be Admitted *Pro Hac Vice*)
   (dkaplan@chitwoodlaw.com)
9  CHITWOOD HARLEY HARNES LLP
   2300 Promenade II
10 1230 Peachtree Street, N.E.
   Atlanta, Georgia 30309
11 Telephone: (404) 873-3900
   Facsimile: (404) 876-4476

E-filing

12

13

14

15  ## UNITED STATES DISTRICT COURT

16  ## NORTHERN DISTRICT OF CALIFORNIA

PVT

17  Chandra Sanders, on Behalf of Herself | Case No.
    and All Others Similarly Situated, CV 08 1713

18          Plaintiff,

19          vs.                              **CLASS ACTION COMPLAINT**

20  Apple, Inc., a California Corporation;   **JURY TRIAL DEMANDED**
    and DOES 1 through 250, inclusive;

21

22          Defendants.

23

24      Plaintiff, Chandra Sanders ("Plaintiff"), individually and on behalf of the Class

25  described below, by her attorneys, makes the following allegations based upon

26  information and belief, except as to allegations specifically pertaining to Plaintiff and her

27  counsel, which are based on personal knowledge. Plaintiff brings this action for damages

28  and injunctive relief against Defendant, demanding trial by jury.

---

**CLASS ACTION COMPLAINT**

**NATURE OF THE ACTION**

1.    Plaintiff brings this action against Apple, Inc. ("Apple") to recover damages and other relieve available at law and equity on behalf of herself as well as on behalf of the members of the following class:

> *All persons or entities located within the United States who*
> *own a 20-inch Aluminum iMac.*

2.    Apple is a leading manufacturer of personal computers and consumer electronics.  One of Apple's most successful products is a personal computer known as the iMac, an "all-in-one" desktop computer that combines the monitor into the same case as the CPU.   Since its introduction in 1998, the iMac product line has undergone numerous revisions and updates.  These revisions have nearly always resulted in better, faster and more capable iMacs usually at the same (or lower) price than the previous iMac generation.

3.    The most recent version of the iMac (referred to herein as the "Aluminum iMac") was released in August of 2007.  These new Aluminum iMacs are available in two screen sizes: a model with a 20-inch active-matrix liquid crystal display (the "20-inch Aluminum iMac") and a model with a 24-inch active-matrix liquid crystal display (the "24-inch Aluminum iMac").  The 20-inch Aluminum iMac uses a Liquid Crystal Display ("LCD") display that is significantly – as well as objectively – inferior to the display used in the 24-inch Aluminum iMac.  Not only is the LCD display in the 20-inch Aluminum iMac inferior to the display used in 24-inch Aluminum iMacs, but it also is significantly inferior to the display used in the previous generation of 20-inch iMacs – the same iMacs that the 20-inch Aluminum iMac replaced.

4.    The inferior display used in the 20-inch Aluminum iMac is cheaper to manufacture, but those savings come at price.  Due to the nature of the display technology used, the displays for the 20-inch Aluminum iMacs have a narrower viewing angle, have less color depth, are able to display fewer colors, have less color accuracy and are more susceptible to washout across the screen.

**CLASS ACTION COMPLAINT**

1    5.    Apple represents to consumers that the displays used in both the 20-inch

2    Aluminum iMacs and the 24-inch Aluminum iMacs are capable of representing:

3    "Millions of colors at all resolutions." While the display technology used for the 24-inch

4    Aluminum iMacs is capable of representing "millions of colors," the inferior display

5    technology used in 20-inch iMacs is only capable of displaying 262,144 true colors, not

6    "millions of colors."

7    6.    This action arises from the fact that Apple failed to disclose that the LCD

8    display used in the 20-inch Aluminum iMac is inferior to the display used in the 24-inch

9    Aluminum iMac, is inferior to the display used in the previous generation of 20-inch

10    iMacs that it replaced, and is not capable of natively displaying "millions of colors."

11    **THE PARTIES**

12    7.    Plaintiff Chandra Sanders is a citizen of Texas who owns a 20-inch

13    Aluminum iMac.

14    8.    Plaintiff is informed and believes and thereon alleges that defendant Apple,

15    Inc. ("Apple") is a California corporation doing business in the State of California.

16    Apple's corporate headquarters are located at One Infinite Loop, Cupertino, California

17    95014.

18    9.    Plaintiff does not know the true names or capacities of the persons or

19    entities sued herein as DOES 1 to 250, inclusive, and therefore sues such defendants by

20    such fictitious names. Plaintiff is informed and believes and thereon alleges that each of

21    the DOE defendants is in some manner legally responsible for the damages suffered by

22    plaintiff and the members of the class as alleged herein. Plaintiff will amend this

23    complaint to set forth the true names and capacities of these defendants when they have

24    been ascertained, along with appropriate charging allegations, as may be necessary.

25    **JURISDICTION AND VENUE**

26    10.    This Court has original jurisdiction over the claims asserted herein

27    individually and on behalf of the class pursuant to 28 U.S.C. section 1332, as amended in

28    February 2005 by the Class Action Fairness Act. Jurisdiction is proper because:( 1 ) the

— 3 —

**CLASS ACTION COMPLAINT**

1   amount in controversy in this class action exceeds five million dollars, exclusive of

2   interest and costs; (2) there is complete diversity of citizenship between Plaintiff and

3   Apple; and (3) a substantial number of the members of the proposed class are citizens of

4   a state different from defendant Apple.

5       11.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and

6   (c) in that Apple resides in this district and a substantial part of the events or omissions

7   giving rise to the claim occurred in the Northern District of California.

8                               **FACTUAL ALLEGATIONS**

9       12.   Computers display digital images on monitors.

10      13.   Digital images consist of "pixels." A pixel is the smallest part of a

11  digitized picture. When all of the pixels are displayed in the correct location, a correct

12  image is displayed on the monitor.

13      14.   Each pixel is comprised of three "channels." Each cannel corresponds to

14  one of the three main colors used to display digital images: red, blue, and green

15      15.   Each channel is comprised of a certain number of "bits." A bit is the

16  smallest measure of digital information. A bit can take the value of either 0 or 1, or, in

17  lay terms, "on" or "off." When a certain color is displayed for a particular pixel, certain

18  bits in each channel will either be displaying the color or not. The particular combination

19  of on and off bits in each channel results in the desired color for that pixel.

20      16.   The number of bits in each pixel determines the total number of colors a

21  computer monitor can physically display, this is called color depth. With a 6-bit monitor,

22  each channel contains 6-bits, or 18-bits in total. Each of these bits can be in one of two

23  states, on or off. For example, in the red channel, one potential variation is that all of the

24  bits are in the on state. A second variation is that bit 1 is off and the rest are on. The

25  result is that each channel is able to display $2^6$ variations. Since there are three channels

26  for each pixel, and each channel is able to display $2^6$ variations, the total number of colors

27  a 6-bit monitor can display equals $2^6 \times 2^6 \times 2^6$, or 262,144.

28      17.   Higher quality monitors are able to display 8-bits per channel, or 24 bits in

— 4 —

**CLASS ACTION COMPLAINT**

1  total.  The total number of colors an 8-bit monitor can display is equal to $2^8$ x $2^8$ x $2^8$, or

2  16,777,216.

3      18.    The higher the number of colors a monitor can display, the more accurate

4  the on screen color will be to the "real life" colors digitally captured on the image. This

5  color accuracy is especially important in photo and video editing.

6      19.    6-bit monitors attempt to compensate for their inherent inferiority though

7  color simulation processes known as "dithering" and "frame rate control" (or "FRC").

8  The human brain can be "tricked" into seeing a particular color shade by using many

9  almost identical shades. In a small display area, the brain will average all of the present

10  colors creating the perception of the desired color shade.  For example, dithering is a

11  process that uses a combination of adjacent pixels to produce the desired shade.

12  Similarly, the FRC process displays alternating shades of colors close to the desired

13  shade onto a single pixel. When done at a high speed this creates the illusion of the

14  desired color shade.  While these processes are able to approximate the number of colors

15  possible on an 8-bit display, they are noticeable to many.

16      20.    Emulation of "true colors" via dithering or FRC can cause the appearance

17  of transverse stripes in smooth color gradients. Even worse, these techniques can

18  completely fail on specific pictures, which may result in flickering. Both of these

19  problems are particularly crippling when displays using this technology are used for

20  image and video editing,

21      21.    Because of its significant drawbacks, displays using dithering or FRC

22  technology are deemed by many to not be suitable for editing video or photos.

23      22.    Apple specifically markets its 20-inch aluminum iMacs for editing movies

24  and photos, promising "graphics, photos, and videos [that] come alive with richer colors

25  and deeper blacks."

26      23.    On August 7, 2007, Apple held a press event to announce the new

27  Aluminum iMacs.  At the event, Apple's CEO, Steve Jobs, trumpeted the new glossy

28  displays used in the Aluminum iMacs, stating: "Our customers have told us that they love

— 5 —

**CLASS ACTION COMPLAINT**

1   the new glossy displays." As a video behind Mr. Jobs played showing an image on the

2   "old" iMac display slowly transforming into what it looked like on the new display, Mr.

3   Jobs stated: "These were the pre-glossy displays and we removed some coatings and

4   other things and give them their actual digital assets as they're meant to be seen. For

5   photos, for movies they look *way better* on these glossy, beautiful, crisp displays." Mr.

6   Jobs never revealed that a different, inferior, display technology was being used for the

7   20-inch Aluminum iMacs. Nor did Mr. Jobs ever mention that the new 20-inch

8   Aluminum iMacs used an objectively inferior display technology than what was found in

9   the previous generation of 20-inch iMacs.

10          24.    A press release issued by Apple on August 7, 2007 begins with the

11   following sentence: "Apple today unveiled an all new all-in-one iMac line featuring

12   *gorgeous 20- and 24-inch widescreen displays*...." (Emphasis added.) The press release

13   goes on to state: "The new iMac's 20- and 24-inch glossy widescreen displays provide

14   incredibly crisp images, ideal for photos and movies...." Nowhere in the press release

15   does Apple reveal that the 20-inch Aluminum iMac uses a significantly inferior display

16   that the display found in the 24-inch Aluminum iMac. Nor does Apple reveal that the

17   new 20-inch Aluminum iMacs used an objectively inferior display technology than what

18   was found in the previous generation of 20-inch iMacs.

19          25.    Most modern computer monitors are liquid crystal displays ("LCD").

20   These often come in two types. One common type of LCD monitor is based on a

21   technology known as twisted nematic film ("TN"). This is the least expensive type of

22   LCD monitor. TN LCD monitors are only capable of 6-bit color. A second type of LCD

23   monitor is in-plane switching ("IPS"). IPS LCD monitors are capable of 8-bit color.

24          26.    TN LCD monitors are more susceptible to "color washout," or a significant

25   degradation of color accuracy. This is especially true when these screens are looked at an

26   angle.

27          27.    The previous version of Apple's 20-inch iMac contained an 8-bit IPS

28   monitor. This monitor was capable of natively displaying the full 16,777,216 colors.

— 6 —

**CLASS ACTION COMPLAINT**

1  The 20-inch iMac Aluminum, unlike the previous 20-inch iMac and unlike the 24-inch

2  iMac Aluminum which both used an IPS LCD monitor, uses a 6-bit TN monitor, capable

3  of displaying only 262,144 colors.

4          28.    In its marketing materials, Apple describes the display of both the 24-inch

5  and 20-inch iMac Aluminum models as though they were interchangeable, even though

6  the monitors in each are of radically different technology.

7          29.    On its website, Apple states: "Whether you've got your eye on the 20-inch

8  or breathtaking 24-inch iMac, you'll enjoy a wondrous widescreen performance from

9  every seat in the house."  Apple makes this representation without informing consumers

10  that the 20-inch iMac Aluminum uses inferior display technology.

11         30.    On its website, Apple states: "No matter what you like to do on your

12  computer — watch movies, edit photos, play games, even just view a screen saver — it's

13  going to look stunning on an iMac."  Apple makes this representation without informing

14  consumers that the 20-inch iMac Aluminum uses inferior technology, which is

15  particularly ill-suited to editing photographs because of the display's limited color

16  potential and the distorting effect of the color simulation processes.

17         31.    On its website, Apple states: "Built-in 20-inch (viewable) or 24-inch

18  (viewable) glossy widescreen TFT active-matrix liquid crystal display."  Apple makes

19  this representation without informing consumers that the 20-inch iMac Aluminum uses

20  inferior technology.

21         32.    On its website, Apple states: "Millions of colors at all resolutions."  Apple

22  makes this representation without differentiating between the 20-inch and the 24-inch

23  iMac Aluminum models.  As to the 20-inch model, this representation is false as the 20-

24  inch iMac Aluminum's TN LCD monitor is only capable of displaying 262,144 true

25  colors, not "millions of colors."

26         33.    Based on Apple's marketing statements, a reasonable consumer would have

27  no reason to suspect that the 20-inch iMac Aluminum contained vastly inferior LCD

28  technology from the 24-inch iMac Aluminum or the previous 20-inch iMac model.

— 7 —

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

34.     Description of the Class: Plaintiff brings this nationwide class action on behalf of herself and a Class defined as follows:

> *All persons or entities located within the United States who*
> *own a 20-inch Aluminum iMac.*

35.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries. and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

36.     Plaintiff and the Class bring this action for equitable, injunctive and declaratory relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of rule 23 of the Federal Rules of Civil Procedure.

37.     Numerosity:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of Class members is at least in the tens of thousands and members of the class are so numerous and geographically dispersed across the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

38.     Common Questions of Law and Fact Predominate:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.     Whether Apple has failed to disclose to consumers the material fact that the 20-inch iMac Aluminum, marketed as though indistinguishable from the

**CLASS ACTION COMPLAINT**

1    24-inch iMac Aluminum, contains a 6-bit TN LCD monitor;

2           b.      Whether or not Plaintiff and the members of the Class have been

3    damaged by the wrongs complained of herein, and if so, the measure of those

4    damages and the nature and extent of other relief that should be afforded;

5           c.      Whether Apple engaged in unfair, unlawful and/or fraudulent

6    business practices;

7           d.      Whether Apple failed to disclose material facts about the 20-inch

8    iMac Aluminum;

9           e.      Whether Apple's statement that the 20-inch iMac Aluminum was

10   capable of "millions of colors" created an express warranty and whether Apple

11   breached that warranty; and

12          f.      Whether Apple was unjustly enriched through the wrongs

13   complained of herein.

14   39.    Typicality:  Plaintiff's claims are typical of the claims of the members of

15   the class.  Plaintiff and all members of the class have been similarly affected by

16   Defendant's common course of conduct since their printers acted in exactly same way.

17   40.    Adequacy of Representation:  Plaintiff will fairly and adequately represent

18   and protect the interests of the Class.  Plaintiff has retained counsel with substantial

19   experience in prosecuting complex and class action litigation.  Plaintiff and her counsel

20   are committed to vigorously prosecuting this action on behalf of the Class, and have the

21   financial resources to do so.  Neither Plaintiff nor her counsel have any interests adverse

22   to those of the Class.

23   41.    Superiority of a Class Action:  Plaintiff and the members of the Class

24   suffered, and will continue to suffer, harm as a result of Defendant's unlawful and

25   wrongful conduct.  A class action is superior to other available methods for the fair and

26   efficient adjudication of the present controversy.   Individual joinder of all members of

27   the class is impractical. Even if individual class members had the resources to pursue

28   individual litigation, it would be unduly burdensome to the courts in which the individual

**CLASS ACTION COMPLAINT**

1 | litigation would proceed. Individual litigation magnifies the delay and expense to all
2 | parties in the court system of resolving the controversies engendered by Defendant's
3 | common course of conduct. The class action device allows a single court to provide the
4 | benefits of unitary adjudication, judicial economy, and the fair and equitable handling of
5 | all class members' claims in a single forum. The conduct of this action as a class action
6 | conserves the resources of the parties and of the judicial system, and protects the rights of
7 | the class member. Furthermore, for many, if not most, class members, a class action is the
8 | only feasible mechanism that allows therein an opportunity for legal redress and justice.

9 |       42.     Adjudication of individual class members' claims with respect to the
10 | Defendant would, as a practical matter, be dispositive of the interests of other members
11 | not parties to the adjudication, and could substantially impair or impede the ability of
12 | other class members to protect their interests.

13 | **FIRST CAUSE OF ACTION**
14 | **Fraudulent Concealment**

15 |       43.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and,
16 | to the extent necessary, pleads this cause of action in the alternative.

17 |       44.     Apple knew at all material times that its 20-inch iMac Aluminum contained
18 | a 6-bit TN LCD monitor, and LCD monitor of inferior technology capable of displaying
19 | only 262,144 true colors, yet marketed the 20-inch iMac Aluminum as having a monitor
20 | indistinguishable from that of the superior one used in the 24-inch iMac Aluminum.

21 |       45.     These facts were not known to Plaintiff and the Class.

22 |       46.     Apple had a duty to disclose the above known material facts because Apple
23 | knew that these material facts were unknown to Plaintiff and the Class, because Apple
24 | was in a superior position of knowledge with regard to its own technology, and because
25 | Apple chose to make certain representations that presented only a part of the true story
26 | and misled consumers about the subject products.

27 |       47.     Apple's knowledge that 20-inch iMac Aluminum contained an interior TN
28 | LCD monitor, combined with Apple's knowledge that Plaintiff and the Class reasonably

— 10 —
**CLASS ACTION COMPLAINT**

1   relied upon Apple to communicate the true state of facts relating to its iMac Aluminum,

2   creates a legal obligation on Apple's part to disclose to Plaintiff and the Class that its 20-

3   inch iMac Aluminum contained an inferior TN LCD monitor.

4       48.    Plaintiff and the Class were unaware of the above facts and would not have

5   acted as they did if they had known of the concealed material facts.

6       49.    Apple intentionally concealed and/or suppressed the above facts with the

7   intent to defraud Plaintiff and the Class.

8       50.    Apple's concealment of the above facts has caused damage to Plaintiffs and

9   the Class in an amount to be shown at trial.

10      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

11              **SECOND CAUSE OF ACTION**

12      **Violation of California Business and Professions Code §17200 et. seq.**

13      51.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,

14  to the extent necessary, pleads this cause of action in the alternative.

15      52.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in

16  fact and has lost money or property as a result of Apple's actions as delineated herein.

17      53.    This cause of action is brought on behalf of all people of the State of

18  California in accordance with the provisions of California Business & Professions Code

19  section 17204. Class members have lost money or property as a result of Apple's actions

20  as delineated herein, and the misrepresentations made by Apple were material to their

21  decision on whether or not to purchase the product.

22      54.    Apple's actions as alleged in this complaint constitute an unfair or

23  deceptive practice within the meaning of California Business and Professions Code

24  section 17200 in that Apple's actions are unfair, unlawful and fraudulent, and because

25  Apple has made unfair, deceptive, untrue or misleading statements in advertising media,

26  including the Internet, within the meaning of California Business and Professions Code

27  sections 17500, et seq.

28      55.    Apple's business practices, as alleged herein, are unfair because they offend

— 11 —

**CLASS ACTION COMPLAINT**

1  established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or

2  substantially injurious to consumers in that consumers are not informed that Apple's 20-

3  inch iMac Aluminum contains an inferior TN LCD monitor.

4      56.    Apple's business practices, as alleged herein, are unlawful because the

5  conduct constitutes false marketing and advertising, as well as the other causes of action

6  herein alleged.

7      57.    The practices are fraudulent because they are likely to deceive consumers

8  into believing that that their 20-inch iMac Aluminum contained the same high quality

9  LCD monitor as the 24-ich iMac Aluminum when, in fact, it does not.

10     58.    Apple's alleged wrongful business acts constituted, and constitute, a

11  continuing course of conduct of unfair competition since Apple is marketing and selling

12  their products in a manner that is likely to deceive the public.

13     59.    Apple's business acts and practices, as alleged herein, have caused injury to

14  Plaintiff and the Class.

15     60.    Pursuant to section 17203 of the California Business and Professions Code,

16  Plaintiff and the Class seek an order of this court enjoining Apple from continuing to

17  engage in unlawful, unfair, or deceptive business practices and any other act prohibited

18  by law, including those acts set forth in the complaint. Plaintiff and the Class also seek

19  an order requiring Apple to make full restitution of all moneys it wrongfully obtained

20  from Plaintiff and the Class.

21     WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

22                    **THIRD CAUSE OF ACTION**

23                    **Breach of Express Warranty**

24     61.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,

25  to the extent necessary, pleads this cause of action in the alternative.

26     62.    There is an express warranty between Apple as the manufacturer and

27  plaintiff and the Class. The express warranty was created by Apple's affirmations in its

28  promotional materials that 20-inch iMac Aluminum was capable of displaying "millions

**CLASS ACTION COMPLAINT**

1   of colors." These statements were made by the seller prior to and at the time of sale, for

2   the purpose of assuring the buyer of the truth of the facts affirmed.

3       63.    The failure of Apple's 20-inch iMac Aluminum to natively display

4   "millions of colors" is a breach of the express warranty upon which plaintiff and the class

5   reasonably relied and which proximately caused plaintiff and the class's injury

6       64.    Timely notice of the breach to Apple is not required because this is an

7   action against a manufacturer on a warranty that arises independently of a contract of

8   sale.

9       WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

10  ## FOURTH CAUSE OF ACTION

11  ### Unjust Enrichment

12      65.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,

13  to the extent necessary, pleads this cause of action in the alternative.

14      66.    Apple has received money belonging to Plaintiff and the Class through the

15  sale of 20-inch iMac Aluminum marketed as capable of displaying "millions of colors"

16  and as having an LCD monitor that is of the same quality of that in the 24-inch iMac

17  Aluminum when in fact the displays are only capable of displaying 262,144 colors and

18  employ a technology that is demonstrably lesser quality than the technology employed by

19  the 24-inch iMac display.

20      67.    As a direct and proximate result of Apple's misconduct as set forth above,

21  Apple has been enriched at the expense Plaintiff and the Class.

22      68.    Under principles of equity and good conscience, Apple should not be

23  permitted to keep the full amount of funds it received from Plaintiff and the Class's

24  purchase of Apple's 20-inch iMac Aluminum.

25      69.    Apple should make restitution to Plaintiff and the Class.

26      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

27  ### PRAYER FOR RELIEF

28      WHEREFORE, Plaintiff and members of the Class request that the Court enter an

**CLASS ACTION COMPLAINT**

1   order or judgment against the Defendant as follows:

2        1.     Certification of the proposed class and notice thereto to be paid by

3   Defendant;

4        2.     Adjudge and decree that Defendant has engaged in the conduct alleged

5   herein;

6        3.     For restitution and disgorgement on certain causes of action;

7        4.     For an injunction ordering Defendant to cease and desist from engaging in

8   the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

9        5.     For compensatory and general damages according to proof on certain

10   causes of action;

11        6.     For special damages according to proof on certain causes of action;

12        7.     For both pre and post-judgment interest at the maximum allowable rate on

13   any amounts awarded;

14        8.     Costs of the proceedings herein;

15        9.     Reasonable attorneys fees as allowed by statute; and

16        10.    Any and all such other and further relief that this Court may deem just and

17   proper.

18

19   DATED: March 31, 2008       **KABATECK BROWN KELLNER LLP**

20

21                     By _____

22                           Brian S. Kabateck
                              Richard L. Kellner

23                           Alfredo Torrijos
                              *Counsel for Plaintiff and the class*

24

25                     **CHITWOOD HARLEY HARNES LLP**
                    Gregory E. Keller (To be Admitted *Pro Hac Vice*)

26                     Darren T. Kaplan (To be Admitted *Pro Hac Vice*)
                    *Counsel for Plaintiff and the class*

27

28

— 14 —

**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

DATED: March 31, 2008      **KABATECK BROWN KELLNER LLP**

By _____
       Brian S. Kabateck
       Richard L. Kellner
       Alfredo Torrijos
       *Counsel for Plaintiff and the class*

**CHITWOOD HARLEY HARNES LLP**
Gregory E. Keller (To be Admitted *Pro Hac Vice*)
Darren T. Kaplan (To be Admitted *Pro Hac Vice*)
*Counsel for Plaintiff and the class*

— 15 —

**CLASS ACTION COMPLAINT**

# E-filing

## CIVIL COVER SHEET    PVT    (4)

**JS 44** (Rev. 12/0?) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provide d by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
CHANDRA SANDERS on Behalf of Herself and All Others Similarly Situated

### DEFENDANTS
APPLE, INC. a California Corporation; and DOES 1 through 250, inclusive

**(b)** County of Residence of First Listed Plaintiff Grimes County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attachment

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 442 Employment | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 444 Welfare | [ ] 535 Death Penalty | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus— Alien Detainee | | [ ] 950 Constitutionality of State Statutes |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sec. 1332 et seq.
Brief description of cause:
Fraudulent Concealment, Viol. of Calif. Bus. & Prof. Code sec 17200 et seq., Breach of Express Warranty, Unjust Enrichment

## VII. REQUESTED IN COMPLAINT:
[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE 3/28/08

SIGNATURE OF ATTORNEY OF RECORD

Attachment to Civil Cover Sheet

Plaintiff's attorneys of Record

BRIAN S. KABATECK, SBN 152054
RICHARD L. KELLNER, SBN 171416
ALFREDO TORRIJOS, SBN 222458
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010


GREGORY E. KELLER (To be Admitted Pro Hac Vice)
DARREN T. KAPLAN (To be Admitted Pro Hac Vice)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476