**E-filed 1/21/09**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CHANDRA SANDERS,[1] KEITH YONAI, AND BONNIER CORPORATION, a Florida corporation, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation; and DOES 1-250, inclusive<br><br>Defendants. | Case Number C 08-1713 JF (PVT)<br><br>ORDER[2] GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND<br><br>[Re: docket nos. 15, 19] |

Plaintiffs Chandra Sanders ("Sanders"), Keith Yonai ("Yonai"), and Bonnier Corporation ("Bonnier") (collectively, "Plaintiffs") bring this putative class action on behalf of themselves and all persons who purchased a 2007 twenty-inch Aluminum iMac desktop computer designed,

---

[1] Although she is named as a Plaintiff in the caption, Ms. Sanders concedes that she lacks standing. Plaintiffs requested that her claims be dismissed.

[2] This disposition is not designated for publication in the official reports.

manufactured, and sold by Defendant Apple Inc. ("Apple"). Apple moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike all of the purported class claims. The Court has considered the briefing submitted by the parties as well as the oral arguments of counsel presented at the hearing on November 14, 2008. For the reasons set forth below, the motion will be granted, with leave to amend.

**I. BACKGROUND**

Apple is a leading manufacturer of personal computers and consumer electronics. One of Apple's most successful products is a personal desktop computer known as the iMac. Since its introduction in 1998, the iMac has undergone numerous revisions and updates. The most recent version of the iMac ("Aluminum iMac") was released in August 2007. Aluminum iMacs are available with a twenty-inch active-matrix liquid crystal display ("20-inch Aluminum iMac") or a twenty-four-inch active-matrix liquid crystal display ("24-inch Aluminum iMac").

The 20-inch Aluminum iMac and the 24-inch Aluminum iMac utilize different technologies to display digital images. All digital images consist of pixels, the smallest components of a digitalized picture. Each pixel is comprised of three "channels," which correspond to the three main colors used to display digital images: red, blue, and green. Every channel contains a certain number of "bits"–the smallest measure of digital information. A bit can take the value of either zero or one, or "on" or "off." The particular combination of "on" and "off" bits in each channel results in the desired color of that pixel. The number of bits in each pixel determines the total number of colors a computer monitor is capable of displaying.

The 24-inch Aluminum iMac utilizes an "eight-bit" monitor, capable of displaying 16,777,216 colors.[3] The previous generation of 20-inch iMacs, which the Aluminum iMacs replaced, also used an "eight-bit" monitor. However, the new 20-inch Aluminum iMac uses a

---

[3] In an "eight-bit" monitor, each channel contains eight bits. Each of these bits can be in one of two states, on or off. Thus, each channel is able to display $2^8$ variations. Since there are three channels for each pixel, the total number of channels an "eight-bit" monitor can display equals $2^8$ x $2^8$ x $2^8$, or 16,777,216 colors.

"six-bit" monitor that is able to display only 262,144 colors.[4] To create the same effect as the "eight-bit" monitor, the "six-bit" monitor uses color simulation processes known as "dithering," and "frame rate control" ("FRC"), which causes the brain to perceive a particular color shade by perceiving many nearly identical shades. Compl. ¶ 21. Specifically, dithering uses a combination of adjacent pixels to produce the desired shade. Through the FRC process, a single pixel displays alternating shades of color that are almost identical to the desired shade. When run at a high speed, these processes give the illusion of the desired color shade. Plaintiffs allege that the "emulation of true colors" through dithering can cause the appearance of transverse stripes in smooth color gradients and can result in flickering on particular images. Compl. ¶ 22. They also assert that the 20-inch Aluminum iMacs have a narrower viewing angle, less color depth and accuracy, and are more susceptible to washout across the screen. Plaintiffs contend that these flaws are "particularly crippling" when displays that use this technology are used for image and video editing. Compl. ¶ 22.

Plaintiffs allege that Apple markets both its 20-inch and 24-inch Aluminum iMacs for editing movies and photos and describes the display of both Aluminum iMacs as though they were interchangeable. Plaintiffs assert that at a press conference announcing the new Aluminum iMacs on August 7, 2007, Apple CEO Steve Jobs claimed that photos and movies "look way better on these glossy, beautiful, crisp displays." Compl. ¶ 25. In a press release issued that same day, Apple stated that the new iMac line "featured gorgeous 20- and 24-inch widescreen displays"that provide "incredibly crisp images, ideal for photos and movies . . .". Compl. ¶ 26. Plaintiffs also assert that on its website, Apple states that: "[n]o matter what you like to do on your computer–watch movies, edit photos, play games, even just view a screen saver– it's going to look stunning on an iMac." Plaintiffs allege that Apple made each of these representations without revealing that a the 20-inch Aluminum iMac uses "a significantly inferior display" to the display found in both the 24-inch Aluminum iMac and the 20-inch prior generation iMac. Compl. ¶ 26. Plaintiffs also allege that in the "Technical Specifications" for both the 20- inch

---

[4] A "six-bit" monitor is able to display $2^6 \times 2^6 \times 2^6$, or 262,144 colors.

and 24-inch Aluminum iMacs, the Apple website states: "[m]illions of colors at all resolutions" without disclosing that the 20-inch Aluminum iMac is actually capable of displaying only 262,144 true colors. Compl. ¶ 34. .

Between January and March 2008, Plaintiff Bonnier purchased sixteen 20-inch Aluminum iMacs for various departments of its magazine publishing business. Bonnier asserts that it purchased these computers based on its "positive experience and satisfaction with the two previous generations of iMacs that it owned." Compl. ¶ 37. Yonai purchased his 20-inch Aluminum iMac in August 2007 for his graphics design business. Yonai alleges that he made his purchase based on "the information presented by . . . Apple on its website" and recommendations by friends in the graphics arts industry who owned previous generation iMacs. Compl.¶ 41. Bonnier and Yonai both allege that after purchasing their 20-inch Aluminum iMacs, they noticed color shifting on the screen. Yonai asserts that this color-shifting caused "problems with his graphics work." Compl. ¶ 42. Plaintiffs allege that they "would not have acted as they did if they had known of the concealed material facts." Compl. ¶ 57. Plaintiffs filed the instant action on March 31, 2008 on behalf of themselves and all persons or entities in the United States who own a 20-inch Aluminum iMac, alleging fraudulent concealment, breach of express warranty, violation under Unfair Competition Law ("UCL"), and unjust enrichment.

## II. RULE 12(b)(1) MOTION TO DISMISS

### A. Legal Standard

Because Article III standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . .". *White v. Leem*, 227 F.3d 1214, 1242 (9th Cir. 2002). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *See id.* It also need not presume the truthfulness of the plaintiffs' allegations. *White,* 227 F.3d at 1242 (citing *Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

**B. Standing Pursuant to Article III**

"The party invoking federal jurisdiction bears the burden of establishing [the] requirements in order to meet 'the irreducible constitutional minimum of standing.'" *Salmon v. Pacific Lumber Co.*, 30 F.Supp.2d 1231, 1237 (N.D.Cal 1998). To establish standing, "Plaintiffs must allege (1) that they have suffered an 'injury in fact,' meaning an invasion of a legally protected interest which is 'concrete and particularized,' (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Paralyzed Veterans of Am. v. McPherson,* Case No. C- 06-4670 SBA, 2006 WL 3462780, *10 (N.D. Cal. Nov. 27, 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff does not satisfy the standing requirement "when 'speculative inferences' are necessary to establish either injury or the connection between the alleged injury and the act challenged." *Women's Res. Network v. Gourley*, 305 F.Supp.2d 1145, 1149- 50 (E.D. Cal 2004) (quoting *Johnson v. Weinberger,* 851 F2d 233, 235 (9th Cir1988).

Apple asserts that Plaintiffs' claims should be dismissed for failure to establish a causal connection between Apple's alleged conduct and injury to Plaintiffs. Apple points to allegations that Bonnier purchased the iMacs because of its "positive experience and satisfaction" with two previous generations of iMacs, Compl. ¶ 38, and that Yonai's purchase was "based on the information presented by [] Apple on its website," Compl. ¶ 40. Because Plaintiffs fail to allege specifically that they heard, saw, relied upon, or otherwise were exposed to the allegedly misleading advertising, Apple asserts that Plaintiffs lack standing.

Plaintiffs contend that they sufficiently allege a causal connection by stating that they "were unaware of the facts and would not have acted as they did if they had known of the concealed facts." Compl. ¶ 57. Plaintiffs note that in *Trew v. Volvo Cars of North America*, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006), the plaintiff's allegation that she "would not have paid as much for her vehicle if she had known of the [undisclosed] defect," was held sufficient to impart Article III standing.

Bonnier's allegations state explicitly that its decision to purchase its 20-inch Aluminum iMac was based on customer loyalty rather than the disputed advertising. Accordingly, its claims

will be dismissed for lack of standing under Rule 12(b)(1). However, because Yonai allegedly based his purchase of a 20-inch Aluminum iMac on information presented by Apple's website, the Court need not in engage in speculation as to whether there is a causal connection between his alleged injuries and Apple's allegedly fraudulent conduct. The more pertinent question is whether Yonai has pled sufficient facts to state a claim.

## III. RULE 12(b)(6) MOTION TO DISMISS

### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. V. Twombly*, 127 S. Ct. 1955, 1974 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997); *see also Pareto v. FDIC* 139 F.3d 696,699 (9th Cir. 1998)**,** but it is not proper to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 527 (1983). Accordingly, the Court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

### B. Claim for Fraudulent Concealment

To establish a claim for fraudulent concealment, a plaintiff must allege that: (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 532 (Cal. Ct. App. 2007). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint meets this standard if it alleges "the time, place, and content of the alleged fraudulent misrepresentation or omission; the identity of the person engaged in the fraud; and the

circumstances indicating falseness' or 'the manner in which [the] representations [or omissions] were false and misleading.'" *Genna v. Digital Link Corp.*, 25 F.Supp.2d 1038 (N.D. Cal. 1997) (brackets in original) (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541 , 1547-58 n.7 (9th Cir. 1994). Apple challenges the sufficiency of Yonai's allegations with respect to the first two elements: whether the concealed fact was material and whether Apple had a duty to disclose this fact.

**1. Whether Concealed Fact was Material**

A misrepresentation is judged to be "material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951 , 977 (1997) (quotation marks, citation omitted). Yonai alleges that the "20-inch Aluminum iMac contained an inferior LCD monitor," Compl. ¶ 56, and "yet [Apple] marketed the 20-inch Aluminum iMac as having a monitor indistinguishable from that of the superior one used in the 24-inch Aluminum iMac." Compl. ¶ 53. Yonai also alleges that these facts were not known to him, and "[he] would not have acted as [he] did if [he] had known of the concealed material facts." Compl. ¶ 57. Although Yonai does not state with specificity how Apple's disclosure of the difference between the 20- and 24-inch Aluminum iMac's display technology would have affected his behavior, his allegations are sufficient to assert that a reasonable person would attach some degree of importance to the existence or nonexistence of this difference in the monitors.

**2. Whether Apple had a Duty to Disclose**

A duty to disclose exists if one of four circumstances exist: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts. *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337 (1997).

Yonai argues that his allegations satisfy the second and fourth conditions. First, he alleges that Apple had exclusive knowledge of the material fact that its 20-inch Aluminum iMac was designed with an inferior display, and that Apple was in a superior position of knowledge with regard to its own technology. Compl. ¶ 55. Second, he claims that Apple made the partial representation that both the 20-inch and 24- inch Aluminum iMac were capable of displaying "millions of colors," without revealing that the 20-inch iMac contained an inferior display. Compl. ¶ ¶ 22, 34, 55. Yonai also alleges that Apple made repeated statements about the displays in both the 20-inch and 24-inch Aluminum iMacs, deliberately implying that both computers had the same display. Pl.'s Opp. To Mot. To Dismiss 11. He contends that "[e]ven where no duty to disclose would otherwise exist, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated." *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282, 292 (2004).

A court in this district faced a similar factual situation in *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964 (N.D. Cal. 2008), in which a buyer brought putative class action against a seller, alleging that the seller made misrepresentations and concealed material information in its sale of certain computers. The plaintiff alleged that Alienware had concealed a material design defect and that Alienware had a duty to disclose information regarding this material fact because it had: 1) exclusive knowledge as the manufacturer; 2) actively concealed the defect by failing to disclose; and 3) made partial disclosures in the form of statements about the computers, including "higher performance," "richer multimedia experience," and "each unit is packed full of fans and exhaust units to ensure optimum performance." *Oestreicher,* 544 F.Supp.2d at 973-74. The court dismissed the claim because it lacked specific substantiating facts; it stated that "allegations of this nature with respect to all prongs above could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation." *Oestreicher,* 544 F.Supp.2d at 974.

In much the same way, Yonai fails to describe with specificity representations made by Apple with respect to the display's component parts that would give rise to a duty to disclose, how he relied on such partial disclosures, or the manner in which such representations or

omissions were false and misleading. *See Hoey v. Sony Elecs. Inc.*, 515 F.Supp.2d 1099 (N.D. Cal. 2007) (rejecting a claim for fraudulent concealment because plaintiffs' complaint failed to identify a representation by defendant contrary to the alleged concealment). Although there appears to be a reasonable probability that he could provide such factual specificity, Yonai fails to meet the heightened pleading standard of Rule 9(b).

**C. Claim for Breach of Express Warranty**

To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142 (1986). A plaintiff also must plead that he provided the defendant with pre-suit notice of the breach. California Commercial Code § 2607.

Yonai contends that Apple's representation that the 20-inch Aluminum iMac was capable of displaying "millions of colors" constituted an express warranty between the manufacturer and the Plaintiffs. He alleges that the inability of the 20-inch Aluminum iMac to display "millions of colors" natively is a breach of this warranty, and that his reasonable reliance on this representation proximately caused damages. Compl. ¶¶ 70-72. At issue is whether the phrase "millions of colors" constitutes an express warranty, whether a breach occurred, and whether reliance and notice are required to state a claim.

**1. Whether Apple's Representation that the 20-inch Aluminum iMac Displays "Millions of Colors" Constitutes an Express Warranty**

Statements constituting "mere puffery" cannot support liability under a claim for breach of warranty. *See, e.g. Pulvers v. Kaiser Foundation Health Plan, Inc.*, 99 Cal.App.3d 560, 565 (1979). The distinguishing characteristics of puffery are "vague, highly subjective claims as opposed to specific, detailed factual assertions." *Haskell v. Time, Inc.*, 857 F.Supp.1392, 1399 (E.D. Cal 1994).

Apple contends that "millions of colors at all resolutions" is a vague superlative as opposed to a specific, detailed factual assertion. "[C]ourts have held that such comparative claims, often involving large numbers, are puffing because a consumer cannot reasonably believe

that there is a test behind the claim." *In re General Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F.Supp. 1525 (E.D. Mo. 1997), aff'd, 172 F.3d 623 (8th Cir. 1999), *see Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, Case No. 94CIV3958,1994 WL 267836, *7 (S.D.N.Y. Jun. 15, 1994) (stating that when the alleged representation contains a "round number one advertiser might select at random for the purpose of demonstrating a product's superiority, (e.g. 100 or 1,000), such a statement constitutes puffery.") (parenthetical in original). Apple notes that the San Diego Superior Court recently held that "vague superlatives are puffery and not actionable . . . [and t]his includes statements like MacBook supports 'millions of colors.'" *See* Exhibit A: December 13, 2007 San Diego County Superior Court Ruling in Case No. 37–2007-00066199-CI-BT-CTL.

Yonai asserts that "puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product," *Castrol Inc. V. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993), and that by using the phrase "millions of colors" in the "Technical Specifications" section on Apple's website, Apple made an actionable statement about the specific characteristics of the 20-inch Aluminum iMac. Yonai notes that other details provided within the technical specifications of the iMac include the amount of memory, processor speed, hard drive size, and electrical and operating requirements. Pl.'s Opp. to Mot. to Dismiss 14. Yonai also points out that the "round numbers" cases cited by Apple involved comparative assertions that a particular product was 100 or 1,000 times better than another product. Such statements were held to be non-actionable puffery because a consumer could not reasonably believe that there was a test behind the assertion that a product was 100 times better than another, *see In re GMC*, 966 F.Supp. at 1531, or because the comparative claim contained a round number conjured up by an advertiser. *See Avon Products, Inc.,* Case No. 94CIV3958, 1994 WL 267836, *7.

Here, Apple states that its monitors display "millions" of colors in a list of other technical specifications on which the consumer is expected to rely. Although in an advertising context the phrase "millions of colors" might be considered a vague superlative, the fact that the phrase was used in the technical specifications section of Apple's website transforms it into an express

warranty upon which a potential buyer might rely in deciding whether to purchase the computer.

**2. Whether a Breach Occurred**

A claim for breach of an express warranty requires an actual breach. *See Williams,* 185 Cal.App.3d at 142. Yonai argues that Apple breached the express warranty that the 20-inch Aluminum iMac could display "millions of colors" because the computer does not "natively" display millions of colors, and instead can display only 262,144 colors. Yonai also alleges that the process of dithering used in the 20-inch Aluminum iMac monitor can trick the human eye into seeing certain colors and that it is able only to "*approximate* the number of colors possible on an 8-bit display." Compl. ¶¶ 19-21 (emphasis added).

Apple argues that Yonai makes no factual allegation that he cannot *perceive* "millions of colors" on his 20-inch Aluminum iMacs and points to Yonai's concession that the purpose behind Apple's use of dithering is to approximate the number of colors appearing on the "eight-bit" display. Apple contends that it never represented that its monitors could "natively" display anything. Yonai alleges that Apple expressly warranted the capability of its 20-inch Aluminum iMac to display "millions of colors," Compl. ¶ 70-71, and that providing the emulation of millions of colors through dithering does not satisfy this warranty. Yonai must allege in greater detail why the emulation of "millions of colors" generated by the dithering process amounts to a breach of the express warranty that the computer displays "millions of colors."

**3. Whether Reliance is Required**

Yonai asserts that reliance is not required to support a claim for breach of express warranty, but rather that the statements become "part of the basis of the bargain" under California Commercial Code § 2313. *See Keith v. Buchanan*, 173 Cal.App.3d 13, 23 (1985). However, another court this district has dismissed express warranty claims brought by a plaintiff who never saw the warranted statement, stating that "California courts have held that '[u]nder the law relating generally to express warranties a plaintiff must show reliance on the defendant's representation.'" *Moncada v. Allstate Ins. Co.,* 471 F.Supp.2d 987, 997 (N.D. Cal. 2006) (dismissing claim because plaintiffs presented no evidence that they actually read or relied upon the representations in the website). Although Yonai–the only named plaintiff with standing to

sue–asserts that he looked at Apple's website, he fails to allege reasonable reliance on any specific representations Apple made with respect to the 20-inch Aluminum iMac.

**4. Whether Notice is Required**

California Commercial Code § 2607(3)(A) states that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App.4th 357, 369-70 (1997) (affirming dismissal of express warranty claims because the plaintiff did not provide notice of breach). However, timely notice of a breach of an express warranty is not required where the action is against a manufacturer and is brought "by injured consumers against manufacturers with whom they have not dealt." *Greenman v. Yuba Power Prods.,* 59 Cal.2d 57, 61 (1963). "Between the immediate parties to the sale [the notice requirement] is a sound commercial rule, designed to protect the seller against unduly delayed claims for damages. As applied to personal injuries, and notice to a remote seller, it becomes a booby-trap for the unwary." *Id.* It is designed to protect a consumer who "would not be aware of his rights against the manufacturer . . . [A]t least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings." *Id.* Because Yonai purchased his iMac directly through Apple's online store, the exception does not apply here. Yonai fails to allege timely notice of the breach to Apple.

**D. Claim for Violation of Unfair Competition Laws**

California Business and Professions Code § 17200 *et seq.*, prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal.Civ.Code § 17200. This statute "was intentionally framed in its broad, sweeping language." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999). "[A] plaintiff must have suffered an 'injury in fact' or 'lost money or property as a result of the unfair competition' to have standing to pursue either an individual or a representative claim under the California Unfair Competition Law." *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008).

To state a claim under the "fraudulent" prong of the UCL, a plaintiff must allege that the

challenged practice is likely to deceive members of the public. *Bardin v. DailmerChrysler Crop.*, 136 Cal.App.4th 1255, 1274 (2006). To support liability under the "unfair" prong, the conduct must either (1) "offend[] an established public policy or [be] immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers " or (2) be "tethered to specific constitutional, statutory or regulatory provisions." *Id.* at 1268. A violation of the "unlawful" prong of the UCL may be established by a variety of unlawful acts, including those practices prohibited by law, whether "civil or criminal, federal, state, [] municipal, statutory, regulatory, or court-made." Because Yonai has failed to make out a viable claim for fraudulent concealment or for other wrongdoing, the UCL claim in its present form also is subject to dismissal.

**E. Claim for Unjust Enrichment**

To plead a claim for unjust enrichment, a plaintiff must allege a receipt of a benefit and unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000) (citing *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662-63 (1992)). Plaintiffs allege that Apple has received money resulting from the sales of 20-inch Aluminum iMacs and that Apple received and unjustly retained this benefit. This claim will depend upon the viability of the Plaintiffs' other claims.

**IV. RULE 12(F) MOTION TO STRIKE**

**A. Legal Standard**

Pursuant to Rule 12(f), a party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter." Fed. R. Civ. P. 12 (f). Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery. *See Thompson v. Merck & Co.,* 2004 WL 62710, *5 (E.D. Pa. Jan. 6, 2004). Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed. *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D. Cal. 2005).

**B. Class Allegations**

Plaintiffs purport to represent a nationwide class of "[a]ll persons or entities located

within the United States who own a 20-inch Aluminum iMac." Compl. ¶ 1. Apple urges the Court to dismiss all class claims in this action and to strike all allegations relating to such claims from the complaint. The parties dispute whether the motion to strike class claims is premature, whether the class is ascertainable, and whether individual issues of fact predominate.

**1. Standard for Class Certification**

To bring a class action, a plaintiff must satisfy both Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. Under Rule 23(a), a plaintiff must show that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the plaintiff must demonstrate that one of the requirements of Rule 23(b) is met. Since Yonai requests monetary damages, he must satisfy the requirements of Rule 23(b)(3), requiring a finding that questions of law or fact common to purported class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Facts pertinent to such findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (d) the likely difficulties in managing a class action. *Id.* Under Rule 23, Yonai bears the burden of making a prima facie showing that the requirements are met.

**2. Whether a Motion to Strike is Premature**

Rule 12(f) authorizes courts to strike "from any pleading any insufficient defense or any redundant, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Federal Rules provide a mechanism for exercising defective class allegations before discovery. Pursuant to Rule 23(c), "the court must -at an early practicable time- determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Yonai argues that this Court should reject Apple's

motion to strike his class action allegations as premature and that he is not required to demonstrate that he can satisfy all requirements under Rules 23(a) and 23(b) until the certification stage. However, the Supreme Court has noted that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *General Telephon Co. Of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). This Court may strike "impertinent" matters from the pleadings "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*, 922 F.Supp.1450, 1478 (C.D. Cal. 1996). In this instance, this Court concludes that the motion is not premature.

**3. Whether the Class is Ascertainable**

"[N]o class may be certified that contains members lacking Article III standing . . . The class must therefore be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d. Cir. 2006). Currently, the class definition includes all persons within the United States who own a 20-inch Aluminum iMac. This definition necessarily includes individuals who did not purchase their 20-inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages. Such individuals would lack standing to bring these claims.

**3. Whether Plaintiffs Satisfy the Requirements of Rule 23(b)(3)**

Apple contends that Yonai may not base a nationwide class action on fraud and warranty claims because individual issues with respect to reliance overwhelmingly will predominate the litigation. Yonai responds to this argument by asserting that reliance is not a required element of fraudulent concealment or breach of express warranty.

As discussed above, reliance *is* a necessary element of a claim for breach of express warranty, and an adequate pleading of fraudulent concealment requires specific allegations that the plaintiff would not have acted as he did if he had known of the concealed or suppressed fact. This requirement inquires into the specific facts surrounding each buyer's transaction, and is functionally equivalent to the "reliance element." If the proposed class were to be certified, the Court would be forced to engage in individual inquiries of each class member with respect to

materiality of the statement, whether the member saw Apple's advertisements or visited Apple's website, and what caused the member to make the purchase. Moreover, since Yonai purports to bring a nationwide class action, these individual inquiries very likely would be subject to the differing state laws that may or may not apply.

Courts routinely hold that both fraud and warranty claims are difficult to maintain on a nationwide basis and rarely are certified. *See Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724-30 (5th Cir. 2007) (discussing at length why warranty claims are inappropriate for class treatment); *Castano v. Am. Tabacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("a fraud class action cannot be certified when individual reliance is an issue."); *see also Martin v. Dahlberg, Inc.*, 156 F.R.D. 207 (C.D. Cal. 2007). In light of the foregoing, it is not clear that a nationwide class action is the "superior" method for adjudication of rights. Accordingly, the class allegations will be stricken, with leave to amend. The Court urges Plaintiffs to consider whether a more narrowly defined class might be appropriate.

**IV. ORDER**

Good cause therefore appearing, the motion to dismiss and to strike is GRANTED, WITH LEAVE TO AMEND. Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED: January 15, 2009

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Alfredo Torrijos: at@kbklawyers.com, icd@kbklawyers.com

Brian S. Kabateck: bsk@kbklawyers.com

Darren T. Kaplan: dkaplan@chitwoodlaw.com

David A. Knotts: david.knotts@dlapiper.com

Mark H. Hamer: mhamer@graycary.com

Richard Kellner: rlk@kbklawyers.com, rs@kbklawyers.com

Gregory E Keller
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street NE
Atlanta, GA 30309

Richard L Kellner
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017